We have one case this morning, and it is numbers 18-2865 and 19-2243, New Jersey Department of Environmental Protection, the American Thermoplastics Corporation et al., and also United States, the Beckman Coulter, Inc., and we have Ms. Berlow, Mr. Pollack, and Ms. Rosen. Is that correct? Yes, Your Honor. And, Ms. Berlow, was this the matter where counsel asked if there could be more time for oral argument? Yes, Your Honor. Mr. Pollack filed a motion on that point. Okay. Fortunately or unfortunately, I don't tend to follow the clock too much, so your nine minutes will go beyond that, I'm pretty sure, and the same for Mr. Pollack and Ms. Rosen for her 15 minutes. Anyway, why don't you begin, and we'll go from there. Great. Thank you, Your Honor. Good morning, and may it please the Court. My name is Andrea Berlow. I represent the United States of America, one of the appellants in these consolidated appeals. Mr. Pollack and I will share the allotted time on behalf of our respective clients. I plan to take nine minutes. I would like to reserve two of those minutes for rebuttal. We'll give you nine minutes and add two minutes on at least at the end, so that's fine. Don't worry about the rebuttal right now. Thank you, Your Honor. First question, just a dumb question. Why didn't you intervene in the state matter? In the state matter? Well, I mean, when they settle later with the state, and then the – you've got a – the problem is if there's a claim under 113F2, and they're saying – taking a literal reading of the statute, and the United States has pitched in by far the lion's share of the remediation costs, when there's a settlement with a state, why doesn't the U.S. monitor those and jump in right there? Well, just backing up a bit, Your Honor, there were two separate cases that were consolidated early on. The 1998 enforcement, cost recovery actions, excuse me, separate cases brought by the United States and the state of New Jersey, and those were consolidated and they proceeded and resulted in that 2009 settlement with both the United States and the state of New Jersey against compaction. Then what happens often under CERCLA is that the defendants who are sued by either a state or the United States will cross-claim against other potentially responsible parties, bringing third-party actions for contribution. That's exactly what happened here. I get it, but the point is at one point prior to that time, the CDA – Carter Day, I'll call it – had settled. Do you get notice when those settlements take place with states? Okay, so the court's referring to the 1991 settlement? Correct. Okay, so the 1991 settlement, the United States hadn't brought claims yet in the bankruptcy context. Carter Day did try to bring an affirmative case against the United States, and it was dismissed as unripe and then confirmed by the Second Circuit as unripe. At that juncture, the United States had issued potentially responsible party letters to hundreds of parties, including Carter Day parties, but it had not yet completed the preliminary actions required before it could bring claims against a party. So regardless of whether the United States had notice at that point, it hadn't completed all the preliminary steps under CERCLA to do the cleanup, and therefore any claims the United States might have had weren't right yet. Okay. The question here – you have to balance the principal purpose of Section 113F, which is to encourage early settlements, with the general purpose of CERCLA to ensure that the federal and state governments work together to effect prompt cleanups and PRPs are held responsible for their appropriate share. But how do we do this balancing? What do you suggest? Well, Your Honor, respectfully, there are two purposes of Section 113F, the contribution section. One is to encourage early settlements, and the other is to ensure equitable allocation of costs. And that's what Section 113F is intended to do. Now, as the Court pointed out, the overall purposes of CERCLA are to ensure prompt cleanup of contaminated sites and to ensure that those responsible for the contamination bear the cost and not either the state or the federal taxpayers or the super funds or the state equivalent. So in order to balance the needs of prompt cleanup and of ensuring equitable allocation and ensuring that the parties responsible pay their costs, CERCLA sets up the process that actually unfolded here. So either the United States or the state or both, in this case both, or sometimes a potentially responsible party will engage in the cleanup of the site. And then CERCLA allows the two sovereigns to seek their response costs from the people responsible. So rather than sort of litigating who's responsible and who's going to do the cleanup in advance, CERCLA allows the sovereigns to fund the cleanup and then seek to recover their costs. Now, typically, the United States bears approximately 90 percent of those costs and the state bears approximately 10 percent, and that's approximately what happened here. And those are the cost recovery claims, which, again, fulfills the purpose of CERCLA by allowing the cleanup to proceed promptly. Paying for those cleanups out of the super fund and the New Jersey compensation, still compensation fund, and then recouping that money, then engaging in the litigation after the contamination is dealt with. That's what happened here. Excuse me. CERCLA also allows under 113F the parties that have been named as descendants by either sovereign to then fight it out with the other potential responsible parties, which may number in the dozens and the hundreds and the thousands, for contribution. If they believe that they've paid more than their fair share, for example, they will go after, or more than their equitable allocation, they will go after their other potential responsible parties to pay their fair share. And that's exactly what has happened here. And so now the reason we're here is because the contribution claim that Compaction has brought against the Carter Day parties to get them to contribute their fair share was dismissed by the district court. We posit that it was dismissed wrongly because the district court focused exclusively on one purpose of Section 113F, which is to ensure prompt settlement with either sovereign. But what the district court ignored is that each sovereign bears separate costs, and in this case the United States bore the vast majority of the costs. And rather what the district court did is it lumped all those costs together and didn't even really review whether there had been separate costs, just decided that because they were incurred at the same place for the same cleanup, that they qualified as meeting the second prong of the test in Section 113F2, which is that they were the matters addressed in the 1991 settlement between the state and the Carter Day parties. This was error. Let me go back. Go ahead. You go ahead first. I think we're trying to go back to where Judge Ambrose had it. When that settlement was consummated, where was the United States? The United States was in the process of preparing for the cleanup. It was doing fundamental. Could the United States have intervened at that point to try to get involved in the settlement process? Well, any claims that the United States might have had weren't ripe yet. The United States at that point didn't know what its costs would be, what the cleanup was going to look like, and so it wasn't necessary. CERCLA doesn't require the United States to get involved at that point, and the United States was still engaging in all the preliminary activities that are envisioned under CERCLA. Thank you. The 113F2 says that a person who has resolved his liability to the United States or a state in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Those are the literal words. So when, under your analysis, does a PRP get 113F protection by settling with a state, and when does it not? Well, a PRP gets contribution protection against the state costs, as long as those are matters addressed in the settlement with the state. What the PRP doesn't get is contribution protection for cost recovery claims or contribution claims for any costs, regardless of the source of those costs. So because a state and the federal government have separate ability to expend funds, to bring cost recovery actions, and to settle those actions. Now remember, the United States does not control how a state frames its settlement under CERCLA. The state can sue potentially responsible parties to recoup its own costs under CERCLA, and that's what it did here. But the United States doesn't control what a state puts in its settlement, nor should it, because it is settling the state's costs. The United States brings its own separate cost recovery actions. They are often consolidated if they're occurring at the same time as they were here, and then moves forward seeking to recoup the costs expended from the federal superfund. So while the court... But the literal words of 113F2 seem to support, if you just look at it literally, what the district court did here and what your opponents argue. Well, they... so there's two things, Your Honor. First is that Section 113F2 sets up a two-prong test. It says that first, that third-party defendant must settle its CERCLA liability with the federal or the state government. But then it's only protected, it can only use the defense, that affirmative defense of contribution protection, if the claim, the later claim against it is a matter addressed in the settlement. And that's the part of the test that we argue that the district court misinterpreted. Looking only at whether there was a settlement with the United States or a state, no one disputes that there was a settlement with the New Jersey DEP and the Carter Day parties. The question is, what did it settle? What did they settle? Well, the state does not have the authority to settle the United States claims, as the cooperative agreement makes clear. Of course, there's no legal authority that either the district court or the Carter Day parties can point to for New Jersey having the authority to settle the costs of the United States. And, of course, not surprisingly, it didn't. So while the disjunctive or in 113F2 answers which settlements we look at, the second prong, the matters addressed, answers the scope of any protection that is allowed under that section. And it's that scope where the district court erred. Not to say that the Carter Day parties are afforded no protection by their settlement. The question is the scope of that protection. And here, the scope does not include the cost of the United States. In other words, the district court interpreted that scope too broadly. It lumped all the costs together simply because they were expended at the same site to clean up the same contamination. All right. I just want to ask Judge Hardiman, do you have any questions? Just one. Counsel, you've persuaded me that the United States was not required to intervene. But I'm struggling with why you have standing to appeal compaction's third-party action against the Carter Day parties. I understand that you're hoping that compaction is successful in its appeal because if compaction is successful, that might redound to the benefit of the United States. But why do you have standing yourself rather than just having a downstream interest in compaction's case? Thank you, Your Honor. It's a good question. The United States does not typically get involved in these third-party disputes. The United States, as I mentioned earlier, brings its cost recovery claims and then lets the potentially responsible parties fight it out amongst themselves for equitable allocation and contribution. Here, though, the district court interpreted CERCLA incorrectly. And as the court pointed out, that not only impacts the financial interests of Superfund and the United States' cost expended, but more importantly, it impacts the United States' interest in the proper application of CERCLA and future potentially responsible parties' willingness to settle with the United States. So if a state typically bears no more than 10% of the cost of the cleanup and the United States bears the other 90%, under the district court's ruling, a potentially responsible party could quickly settle with a state for that 10% or whatever portion of that 10% it was willing to pay and then could be protected from potentially the other 90% of the response cost, even if the fellow potentially responsible parties could demonstrate that the initial party was responsible for all of them. That's not how CERCLA is intended to work. But let me just interrupt there. Even accepting everything you just said is true, that sounds a lot like the United States just having an interest in federal law being accurately interpreted by federal judges. That seems like a sort of generic roving supervision. That seems the opposite of typical standing, which is the party having skin in the game, exactly. Well, the United States has skin in the game here and also more broadly in the context of other parties being willing to settle with the United States. And it's more than the proper application of federal law generally. It's the proper application of this particular provision of federal law, which may preclude the EPA from settling and resolving cost recovery actions against PRPs in other contexts. If they know that they can use this Section 113F2, Contribution Protection and Affirmative Defense, as a shield by only settling for a fraction of their costs, they will not be willing to engage in settlement with EPA. And that will not only require EPA to expend far more money on litigating these matters, but also prevent the underlying purposes of CERCLA, which is a prompt cleanup of the action. You'd have to intervene in all those cases, basically, because you'd be very concerned about the PRPs getting off the federal hook for the 10% tariff by settling with the state, I guess. That's the practical problem, right? That is the practical problem, Your Honor, yes. The other practical problem is that the United States does not control what states put into their CERCLA settlements. So to the extent the state wanted to put in sweeping language, having no authority to do so, the United States would have to police every settlement like that. That's simply unrealistic. The United States simply doesn't have the resources and EPA simply doesn't have the resources to focus on policing every settlement and every case that happens under CERCLA between a state and a potentially responsible party. Thank you. Judge Restepo, any further questions? No, I have no further questions. All right. We'll get you back on rebuttal, Ms. Berlaw. You've been up for about almost 19 minutes. Oh, okay. Mr. Pollack. Good morning, Your Honor. How are you? Not complaining. How about you? I'm doing okay. Before I start my oral argument, Your Honor, I had filed a motion to supplement the record with the interstate cooperative agreement that the trial court cited to in its opinion. I wanted to know if the court had the opportunity to have considered that motion. No, we'll likely consider it during our conference. Okay. If I may briefly be heard, and I know you're not making a decision now, the government has identified it as a governmental record, and therefore I would argue 902.13. And second of all, none of us had that document. I frankly don't believe the district court had that document. But the district court on page 15 and 22 of its opinion cited to the document, and therefore respectfully I would request that the court consider it in its deliberations because at SA39 and SA40 it addresses the issues that Ms. Berlaw was just arguing. With that being said, I'll go directly to my argument. Okay. The compaction systems is two entities. It's a transporter, really a chauffeur in the business. We don't own trucks. We don't direct where they go. You tell us where to bring the waste and we do it. CEA, through a subsidiary in Connecticut, directed waste to the Comb-Fill South site. Compaction also was one guy, Al Filani at the Comb-Fill South site, who maintained and repaired equipment for the Comb-Fill Corporation. Comb-Fill did settle. I have no claim against Comb-Fill. We acknowledge that right now. It settled with both the federal and state governments. Comb-Fill, however, was owned by CEA, and CEA's parent at Mrs. JA967 is Carter Dang. CEA is the one that bought the equipment, paid for the equipment, paid for the employees at the Comb-Fill South site, and directed waste to the Comb-Fill South site. And CEA, to get to the discussion you were having with Berlo a minute ago, never paid a penny to the state, the JA1334 and JA1339. What happened was that the state claim was dismissed. It never paid a penny. CEA did not pay anything at all. I look at the Second Circuit opinion, which is the CEA's Second Circuit opinion at 838 at Second 35, and CEA, in its bankruptcy discharge, did not provide notice to the U.S. EPA and did not invite them to the party. In fact, there's no indication that they had any knowledge of it at all. So CEA knew at the time that they had not notified the United States Environmental Protection Agency. They also knew at the time they had not changed the discharge and release. The reason why I note at the time is that I'm now going to change, if you will, into the analysis of the core term matters addressed. I concede, and I know in the DuPont decision, Judge Ambrose, you looked at the legislative history of CERCLA, which I think is anemic, and the legislative history of CERRA, which is only slightly better. The language in 113F2 is obviously far from clear because it says if you settle with the federal or state government, and we concede CEA settled, even though it didn't pay anything. It settled with the state. It did not, however, notify, advise, or involve the United States. If they had wanted to, they certainly had the ability to do so because their subsidiary, Comfil Corp., did. At that point in time, the Comfil South site, which CEA owned and Carter Day lists in its corporate records, this is JA-967, as a liability, they knew about the site. They did not invite the United States. With regard to the matters addressed. In 1991, when the settlement took place with New Jersey DEP and Carter Day, was the United States aware of this? Obviously, it was aware of this as a site, right? Because it was on the 1983 list. Yes, Your Honor. In fact, the site had been listed on the Hazardous Ranking System. It knew about the site, and it had already negotiated the settlement with the subsidiary, Comfil Corp., so all of that is true. So, if it didn't have necessarily notice that Carter Day was settling with the state, how would it—it would still know that something's happening, that this is a site that's listed, this is a site on which there's remediation taking place, it's a site on which there are costs being incurred, and I guess back to my initial question of the U.S., why not attempt to intervene? You say that not having notice means that one side didn't give it notice, but you would seem to think they would be aware otherwise that something was going on. Well, Your Honor, I think whether they knew or not, the Second Circuit, and whether the Second Circuit's correct, I do not know, indicates that they had not scheduled it, that a CEA had not scheduled that claim, Carter Day had not scheduled that claim, had not received formal notice. I'm not hanging on a technicality equivalent with you here. I simply do not know the facts. I do know that bankruptcy is a court of equity, and that therefore the District Court of New York, at the bankruptcy court that is, and the Second Circuit had the claim was, I forget the technical words, but it was set out from the bankruptcy proceeding. And since that was the procedure that they were in at that point in time, I believe that that should be the binding rule here, because the Sister Circuit had that bankruptcy in front of it at that point in time. With regard to a direct answer to your question, I would look at 113H in the legislative history. With the legislative history of CERCLA, there are two things I believe that are fairly clear, and there's a lot of things that are not. One that is clear is that 113, as Senator Stafford pointed through, and Judge Ambrose identified this in the DuPont decision, is that 113's goal is to accomplish an equitable settlement. So I would argue we have to look at this case in that lens and say is it equitable for the one that controlled the waste, sent the waste, controlled the site, hired the site, all that, to not pay anything. But to answer directly to your question, 113H gets to the point of no pre-enforcement review. And the idea there is that the United States cannot be forced to bring an action until it should bring an action or needs to bring an action. I do not know all the factors that Isabella has to go through with her colleagues, but I do know that that's the one other tenet I would say that is pretty clear from the legislative history, which is that there's not supposed to be pre-enforcement review. So if I take your question and flip it around, even if they did know that the state was attempting to do something under the Filled Compensation and Control Act, the state act, that should not be interpreted under CERCLA as forcing the U.S. EPA to the table because otherwise every time the state wants to take action, we inherently are saying we're going to rewrite 113H and force the federal government to act. Does that answer your question, Your Honor? I'm fine. By the way, do any of my colleagues have any questions? I don't, thank you. Not at this time. There's two other sections we would be violating at the same time. Section 104 specifically states that there's federal costs and state costs. As the Second Circuit noted in Niagara-Moha, that's 596 at 112, it says specifically, under CERCLA, states have causes of action independent from the federal government. We would now be saying, no, that while I concede that they settled with the state, now there is just one claim. As Ms. Berlow pointed out, typically in almost all Superfund cases, the federal government pays 90%, the state pays 10% plus operation and maintenance. Now, doesn't it really come down to the second problem that Ms. Berlow talked about? When you talk about in 113F2, claims for contribution regarding matters addressed in the settlement. Obviously, it's referring back to the 91 settlement. So matters addressed, should that be construed broadly or narrowly? And why? Sure. So let me go to the case law on that. AXO in the Seventh Circuit, Rumpke in the Seventh Circuit, those are probably two of the leading decisions. And then you've got in the Third Circuit really is not to rest this issue head on. But in each of those cases, Rumpke, AXO, they both say, let's start with the actual document itself. So if we go directly to the record, this is JA1334, JA1339. This is the bankruptcy order that was allowed the state out of the claim. It says, they're on the state of New Jersey by its designation representative, page 1334. Page 1339, Carter Day and NJDEP have entered to a settlement. In order to, if you look at it from a contractual perspective, which is exactly what the First Circuit suggests, in the Charter case and in the Charter International case, they look at the four corners of the document. And when you look at the four corners of the document, the part that's missing, as the Second Circuit has noted, is the United States Environmental Protection Agency. So if I look either way, in the Seventh Circuit, they take a broader perspective where they look at the intent of the parties at the time. They look at the four corners of the document. But they would also, and the First Circuit takes the more contractual approach. The Tenth Circuit notices kind of both of those. This is the Colorado versus Farmland case. My view is, they're really all kind of a contractual interpretation. If you look at a contract, you're allowed to have extrinsic evidence, which is there to help elucidate and clarify the document, as opposed to parole evidence, which is there to modify. I think that's really a difference. That is standard traditional contractual law. They're just applying it a little bit differently. So when you look at the matter at address, there is no rational way, based upon the facts as we understood them at the time, which is a normal contractual interpretation methodology, based upon the literal wording of JA 1334-1339. Or we can look at the conduct of the parties. If CEA thought or Carter Day thought it was dismissed, then why did it immediately, within a year or so, file an action against the United States? The reason is because it knew at the time, it had not notified, it had not followed the bankruptcy rules, and it was not a matter addressed. And for that reason, I would argue, they specifically missed it. They simply didn't have that claim dismissed. I'll turn, lastly, if you will, to the Atlantic Richfield case. This case was not fully briefed. It's a recent decision of the Supreme Court of the United States. But I believe our argument is completely consonant with this opinion, because in the Atlantic Richfield case, Chief Justice Roberts, writing for the court, noticed that the EPA made direct cleanup sites, that the entire principle, they also note, by the way, that there are state law claims and there are federal law claims. And the court reversed and set this matter back down, noting that the state law claims were distinct and different. And this is another area where the district court below respectfully got it wrong. With all due respect to the trial court opinion below, when you step back, what the court here is saying is that there are federal claims and there are state claims. In this case, according to the fundamental error, I believe, in the district court opinion here is, the court conflated the word site, which is not there, with the matter addressed. The matter addressed was not the site. The matter addressed was the claims brought by the state of New Jersey. If Atlantic Richfield comes up in Ms. Rosen's argument, then I'll give people a chance for a rebuttal on that. Anything further? No, sir. Okay. Thank you. We'll hear from Ms. Rosen. Thank you, Your Honor. Good morning, Your Honor. May it please the court, my name is Deborah Rosen and my representation is on behalf of Apolli Carter Day in this matter. As recognized by Mr. Pollack, there were originally two or three, depending on your accounts, Apollis here or parties below. We had the Coomphil Corporation, we had Combustion Equipment Associates, which went through bankruptcy and emerged as Carter Day. Mr. Pollack has conceded, as they did in their papers, that Coomphil Corporation has been dismissed from this matter as settling with both the state and federal government as part of the bankruptcy proceedings. Your Honor has asked the Department of Justice and Ms. Furlow in her original argument, why didn't the federal court intervene at that time? And I believe her answer was it was premature. Well, it wasn't premature to settle with Coomphil Corporation, the actual owner and operator of the landfill in the 1980s. And accordingly, they could have intervened or settled in this matter. In fact, this party, the Combustion Equipment Associates, Carter Day, went to extraordinary measures in order to try to engage the U.S. EPA and resolve its potential liability here. It initially sued both DEP and EPA in 1986. At that point, this site, the Coomphil South Landfill, had been placed on the national priorities list, and Combustion Equipment Associates, Carter Day, had received a letter naming it as a potentially responsible party. At that point, the district court obviously focused on Section 113F2's language and saying that Carter Day resolved this liability to the United States or a state. My question is, aren't we really interested in the scope of the matters addressed? And that's where Ms. Burlow has, I think, properly focused us. And then the question is, how could a settlement with a state address liability to the federal government, given the clear division of costs and liability described in the cooperative agreement here? Yes, Your Honor, understood. We do believe that the crux of this matter is matters addressed within the settlement in 1991. If the state cannot settle all claims that are subject to contribution under CERCLA or in the statute is meaningless, while that is part of the first prong, a settlement with the state or federal government, it is also probative on the second prong as well, because otherwise you would have to say and. You could never have a state be able to settle its own claims and provide contribution protection for those matters addressed within the settlement. As Mr. Pollack noted, there are several factors that are looked at in order to determine whether a claim, a third-party claim, a contribution claim, is one of the matters addressed in CERCLA. And those factors include not just the response costs. And appellants here focus solely on Section 104 and the alleged federal, I won't say alleged, the federal versus state claims. Other factors also need to be looked at, such as whether this is the same location involved. Other factors the ASCO courts talked about were that no factor is, the hazardous substance is discharged, the time frame, and cleanup costs is just one of those factors. It's clearly the same location, the same site. I don't think there's any dispute about that, is there? No, there is not. All right. But I didn't see anything in the agreement consent decree that references EPA, does it? Or references the United States' costs to clean up the site? Your Honor, you're correct. It does not specifically mention those costs. All right. It seemed that Judge Walsh, the sort of syllogism that he went with, and correct me or modify me if I'm misunderstanding it, but the syllogism goes something like this. The consent decree did not specifically exonerate or exclude the EPA. And because it didn't carve out the EPA from the settlement, he read the statutory language or to include the United States in the settlement. Is that right? Your Honor, I think that Judge Walsh took a broad reading of the settlement agreement to effectuate the purposes. This is a unique situation. These parties were in bankruptcy. They had tried to sue EPA already and had been shut down by the Second Circuit. They had taken a second attempt to resolve their liability with the state. And I think Judge Walsh recognized, relying on equitable factors, as he is able to under Circle 113, that reading the agreement as a whole, it should provide protection from a contribution claim, such as compaction as brought in this matter. And, again, the United States never brought a claim against Carter Day at any time from the very first complaints filed in 1998 and did not participate at all below in the contribution action and the motions for summary judgment. But why should, I guess I'm struggling with why the presumption should be that settlements address matters unless they're carved out or excluded? Because that seems to be the inverse of the way we would normally look at it. We would say that if your client wanted to settle with the United States and be exonerated from any liability for the federal portion of the cleanup, then that would have had to have been addressed in the agreement, and it wasn't. Understood, Your Honor. Really, that type of reading of the statute would make the or meaningless because it would require that two settlement agreements be entered into, one with the state and one with the federal government. And that's nowhere in CERCLA or any of the legislative history. Let me challenge you a little bit on that because I think that's an important argument you make. Obviously, we don't want to read statutes to render any of the statutory language nugatory. And the disjunctive or is important as distinguished from the conjunctive and. So I think you have an important point there, but I'm not sure practically speaking it holds water for this reason. Why doesn't the or simply give the settling party the opportunity to settle with either the state or the federal government or both? Aren't all three options on the table? Your Honor, those options are on the table, but we're here at a point where we're trying to interpret what was meant. And this court in Trinity found that the or, a settlement just with the state, conferred an ability to bring a contribution action under CERCLA. Identical language is interpreted to say what we could say is a sole state action did allow the ability to bring a contribution claim. So the converse should also be allowed, that that settlement should also confer the contribution immunity under CERCLA. This court also in a case decided after the briefing was done here in the Cranberry Brickyard matter, found that contribution claims immunity should be upheld so as not to undermine finality of settlement. And in light of Congress's intent to induce settlements, all settlements should be presumed to afford to the settlers protection against claims for contribution regarding an entire site unless expressed provisions are to the contrary. And that is what we are arguing at this point and what Judge Walz reviewed when he looked at the settlement in this case. It did cover all of the site. And looking at equitable factors, this is somewhat again as I said a unique situation. This is a settlement that was almost 30 years ago before there was a lot of guidance as far as what matters addressed are and how they should be handled in settlement agreements. Let me ask you about that. Can we take that subsequent instruction into consideration in interpreting this particular settlement agreement? Your Honor, I don't believe you can because that was not guidance that was either followed or available to parties at that time. I think it does show that this situation is unique and may not happen again, but it can't be held to penalize parties that they should have known what that guidance was going to be at a settlement that was six years prior to the date of some of that guidance that was issued. Your Honor, with my remaining time, I would just like to kind of address Ms. Furlow's or questions to Ms. Furlow about what stake EPA has in this case. EPA has entered as an appellant here but really has no stake in any of the outcome. If this decision is reversed, the EPA gets nothing and nothing that Carter Day moved on or provided in any of its papers would at any time have impacted cases or claims by the EPA against the Carter Day parties. As I noted earlier, EPA has never been involved at all with any claims against Carter Day, did not intervene at all in the contribution action, didn't even intervene or provide any opposition on the motions for summary judgment, and appeared on reconsideration. And Judge Walsh considered Department of Justice's submission and still upheld his reading, which is a plain reading of the agreement to include as a matter of address all claims related to the Coombsville South landfill. Your Honor, I would just like to briefly address Mr. Pollack's argument on... Let me go back to this. You're saying the United States... here the United States settlement with compaction doesn't explicitly create a recognizable legal interest in which it can seek contributions from Carter Day if it wished? Your Honor, the consent order discussed a contribution action by Carter Day. The United States had settled its claims and Carter Day, the remaining claims against Carter Day were solely compaction claims. Okay, but you realize, I mean, you can still have an indirect interest in the outcome of the appeal, can you not, in order to have standing? Your Honor, yes, I understand that as far as the standing argument. My point is, though, that the United States really has no financial interest at all in this case. And most of what they submitted seems to be amicus, but instead have entered as a party an appellant to this appeal without having any real stake in the outcome financially or really otherwise than the creation of law that they disagree with. But the United States still has an obligation to implement, enforce CERCLA. So there's an argument that if we were to affirm the district court, we might be creating an incentive for PRPs to rush to settle with states in order to avoid contribution claims for federal liability, which typically constitute the lion's share of costs under CERCLA. So maybe it's indirect, but we have to deal with this statute every day of the week for a long time to come. Yes, Your Honor. That is an indirect legal as opposed to financial stake in the outcome. But I do not believe it's sufficient to confer standing as an appellant in this matter, but simply as a party that's interested in how the case law develops in this matter, more appropriately as an amicus in a case. Coming back to the questions or the path that was suggested by Ms. Berlo and also by Mr. Pollack, that you focus on the matters addressed. And is matters addressed, is that going to be construed expansively, which helps you, or narrowly, which doesn't? The Seventh Circuit in AXO took that on directly and said that they're going to address matters in settlement agreements narrowly or in contribution suits because AXO was not a part of that agreement and had no control over its scope. Why shouldn't we apply the AXO logic here, given the fact that New Jersey DEP had no incentive to protect the U.S. interests when it negotiated the settlement back in 1991? Your Honor, the AXO case also recognized that there is no one determinative factor and the relevance of the factors will vary with the facts of the case. In this case, the facts of the case suggest that Compaction, the party really at interest with the financial interest in this matter, was a party and made claims in the bankruptcy for both Compaction Equipment Associates and Coomphil Corporation. So Compaction was represented. EPA will also make claims in the bankruptcy of Coomphil Corporation, as did the New Jersey Department of Environmental Protection. So all these parties were represented, had an interest, and knew about what was going on here. As I noted earlier, Combustion Equipment Associates, Carter Day, went out of its way to try to engage EPA by suing it. An extraordinary thing for most parties to do in an effort to resolve its circle liability. So I do believe that the facts of this case and the different court proceedings that took place in the 1980s culminating in the 1991 settlement agreement cannot allow Compaction nor the United States to, at this point, ignore all the efforts made to resolve the liability and seek to have this agreement read very narrowly when all these attempts were made that demonstrate that this agreement should be read to cover, as matters addressed, any claim related to the Coomphil South landfill. I have one final question that I want to go back to with the standing issue for a second. I thought the EPA settlement with Compaction allowed the EPA to collect more if Compaction can recover contributions from other PRPs. Isn't that correct? Your Honor, there is a $26 million judgment that Compaction had taken voluntarily. That $26 million judgment never has to be paid by Compaction unless they recover more than $11 million, which is the amount they paid in the settlement. But if they do, then the government can recover more contributions from other PRPs, right? Your Honor, they can't recover more than $11 million. I agree that if they recover more than $11 million, the government could get it, but they can't recover more than $11 million for two reasons. First, Compaction now agrees that its claim is only for $19.5 million because they give Carter Day the benefit of the $1.5 million paid to DEP, acknowledging that that is no longer at issue here. They are just seeking what they're calling the federal claims. But also, the $26 million judgment is not an appropriate judgment that contribution could be sought on. In order to get contribution, you have to pay more than your fair share, and there is no obligation anywhere for Compaction to ever pay any amount of that $26 million. And the government only gets something after Compaction gets paid back and some lawyer's fees are paid. So that is certainly a very contingent judgment, not something liquidated that contribution could be sought for. All right. Thank you very much. Any further questions from my colleagues? None from me. Okay. No, not from me either. All right. Thank you. Thank you, Your Honor. Thank you. Ms. Berlo, I think we have two minutes. Thank you, Your Honor. There are a couple things I want to address from Ms. Rosen's argument. The first is that the court pointed out properly that we are interested here in the scope of the matters addressed in the settlement and what that provision means. If the state cannot settle all the claims Ms. Rosen posited, then the or there is meaningless. There is no support for that argument for good reasons. The contribution protection afforded in Section 113F2 can redound to a potentially responsible party for either the state's claims or the federal claims, depending on with whom the potentially responsible party settled and the scope of that protection. The scope of that protection is an affirmative defense. The Carter Day parties bear the burden of establishing that it is appropriate here. They have not done that. The district court's decision did not do that either, and therefore the district court's decision should be reversed. What the district court did do is interpreted the scope too broadly. It conflated matters addressed in the settlement with subject matter. The court asked specifically about the AXA factors. Well, under either a plain reading of the 1991 agreement itself, in other words, the four corners of the agreement, or under the AXA factors, the district court decision erred. That's because the four factors under AXA, only one of which is at issue here. There is no issue, no dispute about the location, the time frame, the substances cleaned up. The only dispute is about the costs, in particular whose costs were addressed in the 1991 settlement. The district court didn't consider the fact that each sovereign incurred distinct costs when it defined the scope of available contribution protection, and that was error. The last thing I want to address is that 1997 guidance document that was the subject of one of the colloquies with Ms. Rosen. That guidance document is addressed to the federal government, not to the state, and for good reason. As I pointed out earlier in my initial argument, the federal government does not control state surplus settlements, and it does not police them. As we pointed out, in fact, the memo itself, the guidance memo itself says, it actually supports our argument, because it says on page 7, at note 7, that matters addressed in federal settlements should not include response costs incurred by a state at the site. So, if anything, this document, to the extent it's relevant here, supports the argument that we're making. In closing, unless the court has other questions. I just have a quick question. As I understand your argument, counsel, you're not denying that the what is an important matter addressed in the settlement, and the what, as I understand it here, is this particular site. Correct. Okay. But what you're saying, as I understand it, is that the who is also important. It's not enough just to say, does the settlement involving New Jersey DEP involve this site. It's also critical to consider who is releasing whom. And here, it's just between those two parties and not the United States. That's correct, Your Honor. Okay. All right. Then, since we agree on all that, please address opposing counsel's argument that interpreting this statute the way the United States suggests would render the word or nugatory in the statute. Certainly, Your Honor. We couldn't disagree more. We cannot apply the or to the matters addressed in the settlement. The or applies to the initial prong, which is which settlement are we talking about. Once we determine which settlement we're talking about, either a state settlement or a federal settlement can be used to assert contribution protection, but then it's up to the party asserting that protection to demonstrate that the matters addressed in that settlement encompass the contribution claims at issue. That's what can't happen here because there is simply no support for it. The state didn't have any authority to settle the United States' claims. There is no indication from the document itself that the state was settling the United States' claims, and there's no support if the court were to look beyond the document to the factors in ACSO, for example, that the district court examined. There's no support there either. Ultimately, the scope of the contribution protection as interpreted by the district court contradicts the law, it contradicts the facts, and as we discussed earlier, it undermines the purposes of CERCLA generally and the contribution defense in particular by denying the ability of any other party to engage in an equitable allocation with its fellow potentially responsible parties. Okay. Any further questions? Not from me. No, not from me either. Thank you. Thank you to all counsel for a very well-presented argument. We'll take the matter under advisement and also ask that a transcript be prepared of today's oral argument and to split it evenly between the two sides, even though I realize two parties are on one side, the compaction of the United States, but they would pay 50% and then Carter Day would pay 50%. Is that all right? Yes, Your Honor. All right. Yes, Your Honor. Thank you very much, and we'll take the matter under advisement.